OPINION *Page 2 
{¶ 1} On September 5, 2007, the Stark County Grand Jury indicted appellant, Michael Kirkman, on one count of receiving stolen property in violation of R.C. 2913.51. Said charge arose from the observation of appellant driving a stolen vehicle.
 {¶ 2} A jury trial was held on January 3, 2008. The jury found appellant guilty as charged. By judgment entry filed January 10, 2008, the trial court sentenced appellant to sixteen months in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 II {¶ 5} "THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL WAS INEFFECTIVE."
 III {¶ 6} "THE APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW BY THE MISCONDUCT OF THE PROSECUTOR."
 I {¶ 7} Appellant claims his conviction was against the sufficiency and manifest weight of the evidence. We disagree. *Page 3 
 {¶ 8} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 9} Appellant was convicted of receiving stolen property in violation of R.C. 2913.51 which states, "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." *Page 4 
 {¶ 10} The owner of the stolen vehicle testified when she stopped at a drugstore, she left her car running. T. at 87. When she came out, her vehicle was gone. T. at 87, 89. Approximately two and one-half hours later, Canton Police Officer Michael Reese detected the vehicle, followed it, and observed the driver pull into a "makeshift driveway" in front of a house on Fifth Street. T. at 94-95. The driver exited the vehicle, went up to the house, and knocked on the door. T. at 95. Upon seeing the officer, the driver threw down his coffee cup and fled. Id. Officer Reese attempted to pursue the individual, but stopped the chase due to "a lot of construction, demolition, high bushes in the area." T. at 96. Officer Reese sent out a description of the individual to other officers. Id. Officer Reese described him as "[t]aller, average build, white male. I believe I put out roughly 6 foot, 180 pounds, blue jeans, black leather jacket." Id. Thereafter, Officer Darrell Pierson observed an individual matching the description at a residence on Third Street. T. at 115. As Officer Pierson approached, the individual fled. T. at 115-116. Upon being questioned by the police, the occupant of the Third Street residence identified appellant as the person who could have been knocking on her door based upon the individual's description. T. at 117.
 {¶ 11} Officer Reese testified he got a look at the individual's face. T. at 97. He was able to identify appellant as the driver of the vehicle, in court as well as through a photograph. T. at 97, 102.
 {¶ 12} A small sample of DNA was obtained from the thrown down coffee cup. From this sample, criminalist Jennifer Creed testified appellant "was a possible contributor of that DNA." T. at 138. *Page 5 
 {¶ 13} We find Officer Reese's identification of appellant, if found to be credible, was sufficient to establish that appellant was guilty of receiving stolen property. The very "footprints" of the driver's actions, as well as his identification from outside sources, collaborated Officer Reese's identification.
 {¶ 14} Upon review, we find no manifest miscarriage of justice.
 {¶ 15} Assignment of Error I is denied.
 II {¶ 16} Appellant claims his trial counsel was ineffective. We disagree.
 {¶ 17} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 18} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 19} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 20} Appellant claims his trial counsel should have objected to hearsay statements made by Officer Reese. Hearsay is defined in Evid. R. 801(C) as "a *Page 6 
statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 21} While investigating the Fifth Street area wherein Officer Reese had observed the driver of the vehicle knocking on the door, Officer Reese explained his contact with some neighbors as follows:
 {¶ 22} "Q. And what was — what was your conversation with them?
 {¶ 23} "A. I had — I had asked them if they would have any idea who would stop over at their house matching the physical description that I had stated earlier. And they gave me the first name of Michael.
 {¶ 24} "Q. Did they give you a last name?
 {¶ 25} "A. No, they did not.
 {¶ 26} "Q. Were they able to give you any other information other than the name of Mike or Michael?
 {¶ 27} "A. They had said that he also frequents a house over on Third Street Northeast." T. at 99-100.
 {¶ 28} Upon speaking with the occupant of the Third Street address, Officer Reese testified to the following:
 {¶ 29} "A. I had asked her, again describing the physical description from earlier, if she knows anybody that would resemble that and be in this area at this time of the morning. She said that it sounds like Mike Kirkman. And I asked her when the last time she saw him was. And I believe she said it had been the day before —
 {¶ 30} "Q. Okay.
 {¶ 31} "A. — that she had seen him. *Page 7 
 {¶ 32} "Q. But she had not seen him on this morning?
 {¶ 33} "A. Correct." T. at 101.
 {¶ 34} We find these statements were not admitted "to prove the truth of the matter asserted," but to show the course of the police investigation and how the police officers were able come up with appellant's photograph.
 {¶ 35} The issue of appellant's identification was the sole issue tried, and it rested solely on the credibility of Officer Reese. Even if an objection to the complained of testimony would have been sustained, the identification would have stood. In fact, appellant's defense of misidentification was made more credible by Officer Reese's testimony as to possible suspects.
 {¶ 36} Upon review, we find no ineffective assistance of counsel.
 {¶ 37} Assignment of Error II is denied.
 III {¶ 38} Appellant claims he was denied due process due to prosecutorial misconduct. We disagree.
 {¶ 39} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168.
 {¶ 40} Appellant complains of the prosecutor's statements in closing argument as to the burden of proof: *Page 8 
 {¶ 41} "MS. KONOVSKY: * * * We have a lot of evidence supporting that it was Michael Kirkman. And the lab results say Michael Kirkman is a possible contributor of that DNA. In fact, one in 550 people. There is no evidence, no evidence that contradicts it. There is nothing saying it is not Michael Kirkman. There has not been any evidence given to you that says it is not Michael Kirkman." T. at 159.
 {¶ 42} In response, defense counsel stated the following during closing:
 {¶ 43} "MR. PITINII: The DNA — there is no way, and there is nothing anybody can say otherwise, the DNA, the best they can tell you is it's possible. That one in 550, guys. All right, I'm going to walk down the street and I'll see 500 people in about five or ten minutes and I guess one of them did it, too. And I know the State of Ohio is going to stand up and say one in 550 is pretty good odds. Come on, anybody that's seen anything on DNA, it's one to the billions. Please.
 {¶ 44} "Again, just so we're clear, I'm not calling Officer Reese a liar, he's probably a very fine officer and a very fine man, but science proves him wrong. That's all I can say.
 {¶ 45} "You want me to put my client on the stand to say, I wasn't there? What's the point of that? The DNA already did it. What's the point? Why do I need to?
 {¶ 46} "There is a saying that some people say in the law, you know, some people that know more than we do sometimes, brevity is a little bit better than beating a dead horse. I'm going to put him on to say what? What you've already been told? Okay, there it is. I don't have any fancy tricks, I don't have any smoking mirrors, I didn't use any fancy lawyer tricks. It's not him. Thank you." T. at 164-166.
 {¶ 47} Thereafter, the prosecutor stated the following during rebuttal closing: *Page 9 
 {¶ 48} "MS. KONOVSKY: * * * You know, I'm not going to stand up here and beat a dead horse either. I mean, I think that the science in this case does nothing but supports the argument. There was no evidence, including that DNA, that contradicts anything, that shows that anyone other than Michael Kirkman committed this crime.
 {¶ 49} "MR. PITINII: Objection.
 {¶ 50} "MS. KONOVSKY: Thank you.
 {¶ 51} "THE COURT: Sustained. Disregard." T. at 167-168.
 {¶ 52} Appellant argues although the objection was sustained, the trial court's comment was insufficient. Defense counsel never requested anything more or an explicit admonition. At the commencement of the case and again at the end, the trial court explicitly charged on ruling on objections as follows:
 {¶ 53} "THE COURT: * * * If a question is asked and an objection to that question is sustained, you will then not hear the answer and you must not speculate as to what the answer might have been or as to the reason for the objection.
 {¶ 54} "If an answer is given to a question and the Court then grants a motion to strike out the answer, you're to completely disregard such question and answer and not consider them for any purpose.
 {¶ 55} "* * *
 {¶ 56} "Statements or answers that were stricken by the Court or to which the Court instructed — you were instructed to disregard are not evidence and must be treated as though you never heard them.
 {¶ 57} "You must not speculate as to why the Court sustained the objection to any question or what the answer to that question might have been. You must not draw *Page 10 
any inference or speculate on the truth of any suggestion included in a question that was not answered." T. at 72-73 and 171-172, respectively.
 {¶ 58} We note no objection was made to the prosecutor's original statements made during closing. An error not raised in the trial court must be plain error for an appellate court to reverse. State v.Long (1978), 53 Ohio St.2d 91; Crim. R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus. Appellant has not shown the outcome of the trial would have been different but for the statements.
 {¶ 59} As for the second set of statements, we find the prosecutor made them in response to defense counsel's comments, and they did not threaten the fairness of the trial. The remarks as to the DNA evidence were made to diminish defense counsel's comments during closing argument and were not an attempt to change the burden of proof.
 {¶ 60} Appellant also argues the prosecutor's statements reflected upon his right not to testify. The statement could have been read either way, and the trial court properly handled the situation by sustaining the objection.
 {¶ 61} Upon review, we do not find any prosecutorial misconduct.
 {¶ 62} Assignment of Error III is denied. *Page 11 
 {¶ 63} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 Farmer, J., Gwin, P.J., and Delaney, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. *Page 1